RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

COUNTY OF OAKLAND and ANDREW E.
MEISNER (12-2135); GENESEE COUNTY and
DEBORAH CHERRY (12-2136),
                    *Plaintiffs-Appellees*,

MICHIGAN DEPARTMENT OF ATTORNEY
GENERAL and MICHIGAN DEPARTMENT OF
TREASURY,
                    *Intervenors-Appellees*,

          *v.*

FEDERAL HOUSING FINANCE AGENCY,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, and FEDERAL HOME LOAN
MORTGAGE CORPORATION,
                    *Defendants-Appellants*.

Nos. 12-2135/2136

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:11-cv-12666; 2:11-cv-14971—Victoria A. Roberts, District Judge.

Argued: May 2, 2013

Decided and Filed: May 20, 2013

Before: MARTIN, GUY and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael A.F. Johnson, ARNOLD & PORTER LLP, Washington, D.C., for
Appellants. William H. Horton, GIARMARCO, MULLINS & HORTON, P.C., Troy,
Michigan, for Appellees. Matthew K. Payok, OFFICE OF THE MICHIGAN
ATTORNEY GENERAL, Lansing, Michigan, for Intervenor Appellees. Patrick J. Urda,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus
Curiae. **ON BRIEF:** Michael A.F. Johnson, Howard N. Cayne, Dirk C. Phillips,
ARNOLD & PORTER LLP, Washington, D.C., David B. Goroff, Ann Marie Uetz,
FOLEY & LARDNER LLP, Detroit, Michigan, Michael J. Ciatti, Merritt E. McAllister,
KING & SPALDING LLP, Washington, D.C., for Appellants. William H. Horton,
GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, Kenneth J. Robinson,

Bloomfield Hills, Michigan, Jason J. Thompson, SOMMERS SCHWARTZ, Southfield, Michigan, for Appellees.   Matthew K. Payok, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Intervenor Appellees. Patrick J. Urda, Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Mark H. Troutman, Mark Landes, ISAAC, BRANT, LEDMAN & TEETOR LLP, Columbus, Ohio, Don Springmeyer, Jonathan H. Waller, Bradley S. Schrager, Tracy H. Slaughter, WOLF, RIFKIN, SHAPIRO SCHULMAN & RABKIN, LLP, Las Vegas, Nevada, for Amici Curiae.

––––––––––––––

**OPINION**

––––––––––––––

McKEAGUE, Circuit Judge.  The State and County plaintiffs sued the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), and the Federal Housing and Finance Agency in an effort to collect state and local real estate transfer taxes that plaintiffs claim are owed for real property transfers made by defendants.   Congress expressly exempted all three defendants from "all [state and local] taxation."   In an effort to get around the plain language of the exemption statutes, plaintiffs argue that when Congress exempted the defendants from "all taxation," it did not intend to exempt them from State and County real estate transfer taxes.   The district court agreed with this argument and granted summary judgment in plaintiffs' favor.   We now reverse and remand with instructions to enter summary judgment for defendants.

**I.**

The Michigan State Real Estate Transfer Tax, MICH. COMP. LAWS § 207.521, *et. seq.*, and the Michigan County Real Estate Transfer Tax, MICH. COMP. LAWS § 207.501, *et. seq.* (the "Transfer Taxes") impose a tax when a deed or other instrument of conveyance is recorded during the transfer of real property.  *See* MICH. COMP. LAWS § 207.502; § 207.523.[1]   The laws make clear that the tax is imposed upon "the person

––––––––––––––

[1]The State tax imposes a tax rate of $7.50 for each $1000 in value of the property sold, and the County tax imposes a rate of $1.10 for each $1000 in value of property sold.  MICH. COMP. LAWS § 207.525(1); § 207.504.

who is the seller or grantor." MICH. COMP. LAWS § 207.502(2) ("The tax shall be upon the person who is the seller or grantor."); § 207.523(2) ("The person who is the seller or grantor of the property is liable for the tax imposed under this act."). In filing this lawsuit, the State and County plaintiffs seek to recover transfer taxes from defendants for real property transfers recorded by defendants in Michigan.

Defendant Fannie Mae is a corporation chartered by Congress to "establish secondary market facilities for residential mortgages," in order to "provide stability in the secondary market for residential mortgages," and "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Defendant Freddie Mac is also a corporation chartered by Congress for substantially the same purposes as Fannie Mae. *Id.* § 1451. Defendant Federal Housing Finance Agency, is an independent federal agency, created under the Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, 122 Stat. 2654, *codified in part at* 12 U.S.C. § 4617, *et. seq.* The Director of the Agency placed Fannie and Freddie into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs . . . ." 12 U.S.C. § 4617(a)(2). As Conservator, the Agency succeeds to all of the "rights, titles, powers, and privileges" of Fannie and Freddie, and also has the power to "operate" them, "conduct all [of their] business," and "preserve and conserve" their "assets and property." *Id.* § 4617(b)(2).

When Congress created defendants, it expressly exempted them from "all" state and local taxes except for taxes on real property. Fannie Mae's charter provides:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, . . . county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).

Similarly, Freddie Mac's charter provides:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter

imposed by any . . . State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, . . . county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e).

Finally, when Congress enacted the Housing and Economic Recovery Act, it granted the Agency a similar exemption in its role as Conservator:

The Agency [as Conservator], including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any property of the Agency [as Conservator] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . .

12 U.S.C. § 4617(j)(2).

On June 20, 2011, Oakland County sued Fannie and Freddie alleging they failed to pay transfer taxes for transactions in which they were the grantors of real property.[2] On November 10, 2011, in a separate action, Genesee County filed a class action suit against all of the defendants on behalf of itself and all Michigan counties similarly situated. The class Complaint made the same allegations as the Oakland County Complaint. The district court certified the class in the Genesee County case. Oakland County opted out. The Michigan Attorney General and Department of Treasury intervened in both actions.

The parties in both actions filed cross-motions for summary judgment, and the district court ultimately granted summary judgment in favor of the State and County plaintiffs. *Oakland Cnty. v. Fed. Hous. Fin. Agency*, 871 F. Supp. 2d 662, 671 (E.D. Mich. 2012).[3] The court first noted that the parties largely agreed on several issues,

---

[2]Oakland County later amended their Complaint to add the Agency, who had intervened in the Oakland County action, as a defendant.

[3]The Orders granting Summary Judgment in the two actions were decided at the same time and the Order in the Genesee Action simply stated the plaintiffs' motion was granted, "For the reasons stated in the Court's Order of March 23, 2012, in *Oakland County, et al. v. Federal Housing Finance Agency, et al.*"

including that the statutes control the outcome of the case, and that "transfer taxes are excise taxes, not taxes on real property.  Therefore, the Transfer Taxes do not fit into the exception in the statutes for real property."  *Id.* at 666-67.  The court drew two other relevant conclusions.  First, it held that *United States v. Wells Fargo Bank*, 485 U.S. 351 (1988) was "dispositive of Plaintiff's case," and that "[t]he Court in *Wells Fargo* recognized that 'all taxation' had an understood meaning, and that it applied only to direct taxes, not excise taxes."  *Id.* at 669.

Second, even though defendants did not argue that they were immune from the Michigan taxes based on their status as federal instrumentalities,[4] the court nevertheless addressed the issue, and held that because Fannie and Freddie were not federal instrumentalities, "they are not exempt under the Michigan statute."  *Id.* at 671. Defendants appealed the district court's summary judgment decision, and the cases were consolidated for argument.[5]

## II.

This Court generally reviews a district court's grant of summary judgment de novo "using the same Rule 56(c) standard as the district court."  *Bowling Green v. Martin Land Dev. Co., Inc.*, 561 F.3d 556, 558 (6th Cir. 2009).  Where the "district

---

[4]MICH. COMP. LAWS § 207.523 states that a deed is exempt from Transfer Taxes if it is "A written instrument in which the grantor is the United States . . . ."  Defendants have not maintained that this provision provides them the exemption here.  As recognized by the district court, this case turns on the interpretation of Congress' use of "all taxation" in Fannie's and Freddie's enabling legislation. *Oakland Cnty.*, 871 F. Supp. 2d at 670.

[5]The district court's March 2012 decision was the first of several federal district court decisions deciding this issue, and the *only* one of 11 district court decisions to conclude that "all taxation" does not include state or local real estate transfer taxes.  *See Hager v. Fed. Nat. Mortg. Ass'n*, 882 F. Supp. 2d 107 (D.D.C. August 9, 2012); *Hertel v. Bank of America N.A.*, 2012 WL 4127869 (W.D. Mich. Sept. 18, 2012); *Nicolai v. Fed. Hous. Fin. Agency*, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013); *Fannie Mae v. Hamer*, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 3:12-cv-50230 (N.D. Ill. Feb. 14, 2013); *Delaware Cnty., Pa. v. FHFA*, No. 2:12-cv-4554 (E.D. Pa. Mar. 26, 2013); *Hennepin Cnty. v. Fannie Mae*, No. 12-cv-2075 (D. Minn. Mar. 27, 2013); *Vadnais v. Fannie Mae*, No. 12-cv-1598 (D. Minn. Mar. 27, 2013); *Montgomery Cnty., Md. v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1832370, No. DKC 13-0066 (D. Md. Apr. 30, 2013); *Cape May Cnty., N.J. v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-4712 (D.N.J. Apr. 30, 2013).  Defendants also allege there are more than 50 other pending actions in federal courts across the country involving the same issue.  Appellant's Br. at 9.  There are also at least three cases, including this one, in federal circuit courts. *See Dist. of Columbia ex rel. Hager v. Fed. Nat'l Mortg. Ass'n*, No. 12-7095 (D.C. Cir.); *State of Nev. ex rel. Hager v. Countrywide Home Loans Serv., L.P.*, No. 11-17491 (9th Cir.).

court's decision turned on its interpretation of a federal statute, . . . this Court reviews that question of law de novo." *Id.*

### III.

The issue before us is whether defendants' exemptions from "all [state and local] taxation" include Michigan State and County real estate transfer taxes.[6]

"It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1989) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "[W]hen the statutory language is plain, [the court] must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Departure from the plain language of a statute is disfavored and "appropriate only in rare cases in which the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafter or when the statutory language is ambiguous." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004) (quotations and alterations omitted). Courts should "'resist reading words or elements into a statute that do not appear on its face.'" *Id.* (quoting *Bates v. United States*, 552 U.S. 23, 29 (1997)).

---

[6]The Counties' opening brief adds the additional argument that even if the panel concludes defendants are exempt, they would still have to pay the tax under the exception in the statute that allows for taxation on any real property "to the same extent according to its value as other real property is taxed." Counties' Br. at 28. Oakland County is the only party to even have remotely raised this argument below and did so only in a one sentence footnote conceding that in order for the carve out to apply the tax would have to be *on* the real property. *See* R. 5 at 7, n. 2, Page ID #30 ("To the extent the transfer tax is considered a tax on real property, it is taxable pusuant to the express language of the statute."). The State plaintiffs have never asserted the argument. The district court did not rule on the exceptions clause, and in fact, the court found that the parties "agree[d]" that "the Transfer Taxes do not fit into the exception in the statutes for real property." *Oakland Cnty.*, 871 F. Supp. 2d at 667. In contrast to their footnote, the Counties have also conceded at several points that the transfer taxes are not direct taxes. *See* Counties' Br. at 5, 9; R. 5 in *Oakland*, Pl's Mot. for Summ. J. at 7, Page ID # 30 ("the transfer tax is an excise tax."). As even the State plaintiffs concede, the Michigan Transfer Taxes were "not on the property itself," and that just because "a tax is measured by the value of property, . . . does not mean that the tax is a property tax." R. 51 at 4, Page ID #617 (quoting *Market Place v. Ann Arbor*, 351 N.W.2d 607 (Mich. Ct. App. 1984); *see also S. Ry. Co. v. Watts*, 260 U.S. 519, 530 (1923) ("a privilege tax is not converted into a property tax because it is measured by the value of property.")) In sum, the Counties forfeited this argument by not pressing it below in any meaningful way, *see generally*, 157 A.L.R. Fed. 581 § 4 (1999); *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (stating that to preserve an argument, it "must be raised to such a degree that the district court has an opportunity to rule on it") (quotations omitted). Even if they had not forfeited the argument, the transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property. *See Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21, 31 n.3 (holding that a documentary stamp tax on the recording of property mortgages was barred, notwithstanding a materially identical carve out for real property taxation as found here).

We have acknowledged "[i]t is not the Court's role to address perceived inadequacies in a statute." *Id.* (quotations and citations omitted).

The statutes at issue here plainly state that defendants are exempt from "all taxation" imposed by the state or local taxing authority. *See* 12 U.S.C. § 1723a(c)(2) (Fannie Mae's charter); § 1452(e) (Freddie Mac's charter); § 4617(j)(2) (Agency exemption). The statutes do not define "all" or "taxation." Where terms are undefined, "[t]he everyday understanding should count for a lot," and we look to "regular usage to see what Congress probably meant." *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006). "Taxation" is the "imposition or levying of taxes;" "the action of taxing or the fact of being taxed." Oxford English Dictionary 679, vol. XVII (2d ed. 1989). As employed in the exemption statutes, "all" is an adjective describing "[t]he entire or unabated amount or quantity of; the whole extent, substance, or compass of; the whole." Oxford English Dictionary 324, vol. I (2d ed. 1989).

Accordingly, the common sense, non-technical interpretation of "all taxation" has to include the State and County real estate transfer taxes here, which impose a tax on the "seller or grantor" when a deed or other instrument of conveyance is recorded during the transfer of real property. MICH. COMP. LAWS § 207.502; § 207.523. In other words, a straightforward reading of the statute leads to the unremarkable conclusion that when Congress said "all taxation," it meant *all* taxation. *Lopez*, 549 U.S. at 53; *see also*, *Sander v. Alexander Richardson Inv.*, 334 F.3d 712, 716 (8th Cir. 2003) ("In short, 'all' means all.").

The statutes' text is revealing in another way. In granting each of the defendants' an exemption, Congress explicitly created a carve-out from the "all taxation" language by permitting taxes on real property. But Congress did not provide a similar carve out for the type of transfer taxes at issue here. "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). Accordingly, because the statutes are clear, we are not in a position to second-guess

Congress and create a new exception in the statute for state and county real estate transfer taxes.

The conclusion that the plain language of the statutes should control here is reinforced by the Supreme Court's decision in *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), and our decision in *United States v. State of Mich.*, 851 F.2d 803, 805 n.1 (6th Cir. 1988). Both of those cases involved entity exemptions in statutes similar to the exemption statutes here.

In *Bismarck*, the Court interpreted an exemption under the Federal Farm Loan Act of 1916. 314 U.S. at 99. The Act stated "That every Federal land bank . . . shall be exempt from . . . State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank . . . ." *Id.* at 96 n.1. The Federal Land Bank of St. Paul purchased building materials and was charged $8.02 in North Dakota sales tax that they refused to pay. *Id.* at 98. The Court noted that the tax was laid directly upon the federal bank, *Id.* at 99, and held that "[t]he unqualified term 'taxation' [in the exemption] clearly encompasse[d] within its scope a sales tax . . . .," and thus the Land Bank was statutorily exempt from paying the $8.02 sales tax. *Id.* at 99.[7]

We passed upon a similar exemption in *Michigan*. 851 F.2d at 805 n.1. Congress had exempted "Federal credit unions . . . , their property, their franchises, capital, reserves, surpluses, and other funds, and their income . . . from all taxation now or hereafter imposed by . . . any State, . . . or local taxing authority; except that any real property . . . shall be subject to . . . State, . . . and local taxation to the same extent as other similar property is taxed." *Id.* (quoting 12 U.S.C. § 1768).

The State had imposed a general sales tax on the credit unions' purchases. The United States, on behalf of the credit unions, sought a declaratory judgment that the taxes were unconstitutional. *Id.* at 804. Though our discussion in part focused on the

---

[7]Though the Court also discussed the federal instrumentality status of the banks, *Bismarck,* 314 U.S. at 101-103, this was not the only basis for the Court's decision as the district court here suggested. *See Oakland Cnty.*, 871 F. Supp. 2d at 670. The *Bismarck* opinion makes clear that the case could have been decided solely on the basis that the plain language of the statute exempted the bank from the sales tax. *Bismarck*, 314 U.S. at 99.

federal credit union's constitutional immunity, we also clearly held that the credit unions had a separate statutory immunity under § 1768 that precluded the application of Michigan's sales tax. *Id.* at 807 ("Accordingly, federal credit unions are immune under the Supremacy Clause, as well as under 12 U.S.C. § 1768, from state taxation."); *id.* at 810 ("I agree that the judgment of the district court must be affirmed, but I write separately to note that because there is a statute (12 U.S.C. § 1768) granting federal credit unions exemption from taxes imposed by state taxing authorities, I think it is unnecessary to decide whether federal credit unions are 'federal instrumentalities . . . .'") (Nelson, J., concurring); *id.* ("I agree also that 12 U.S.C. § 1768 provides federal credit unions, . . . with a clear exemption from 'all taxation . . . .'") (Wellford, J., concurring in part and dissenting in part).

*Bismarck* and *Michigan* both interpreted a statute much like the one at issue here (in *Bismarck* the statute said "taxation" and in *Michigan* it said "all taxation") and in both cases, the courts concluded that the exemption precluded a sales tax on the entities' purchases, even though sales taxes were not a specifically enumerated exemption in the statute. In other words, *Bismarck* and *Michigan* support the straightforward, non-technical reading of the exemptions here. They stand for the proposition that when Congress broadly exempts an entity from "taxation" or "all taxation" it means *all* taxation.

Contrary to this commonsense reading and to the cases supporting it, plaintiffs employ a more arcane line of reasoning in an effort to persuade us that the plain language of the statute should not control here. They argue that when Congress said "all taxation" in the exemption statutes, it did not really mean *all* taxation. Instead, they claim that Congress used the phrase "all taxation" as a term of art—a term with a definition that does not include real estate transfer taxes. Plaintiffs allege that in *United States v. Wells Fargo Bank*, the Supreme Court explained what Congress really meant by "all taxation," and we should therefore rely on *Wells Fargo* in deciding whether the exemptions here apply. Plaintiffs also argue that *Wells Fargo* demonstrates that in determining whether a statutory exemption applies, courts have to look at the nature and

effect of a tax, *i.e.*, whether the tax is laid directly on the subject of the exemption, and that if we employ that method here, we will discover that the exemption does not apply.

In *Wells Fargo,* the Court interpreted a provision of the Housing Act of 1937. *Wells Fargo*, 485 U.S. at 353, 355. The Act attempted to stimulate financing for local housing projects by permitting state and local authorities to issue tax-free "Project Notes." *Id.* at 353. The statute stated that "[Project Notes], . . . shall be exempt from all taxation now or hereafter imposed by the United States." *Id.* at 355. The Court explained that for 50 years after the Act's passage, it was assumed the exemption on the Notes applied to federal income tax (a direct tax), but not to federal estate tax (an excise tax). *Id.* at 353. The reason for this assumption, the Court stated, was that "[w]ell before the Housing Act was passed, an exemption *of property* from all taxation had an understood meaning:  *the property* was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer *the property*, could be taxed." *Id.* at 355 (emphasis added). The Court thus concluded that the Project Notes were not exempt from federal estate taxes because estate taxes were excise taxes, "levied upon the use or transfer of property . . ." rather than "a tax levied upon the property itself." *Id.*

In support of its conclusion, the Court cited a series of cases standing for the principle that an exemption of specific property from taxation did not necessarily extend to excise taxes involving that property. *Id.* at 355 (citing *Greiner v. Lewellyn*, 258 U.S. 384, 386-87 (1922) (holding that federal estate tax applied to municipal bonds despite immunity barring a direct tax on the bond); *Murdock v. Ward*, 178 U.S. 139, 148 (1900) (holding that state inheritance tax measured by the total amount of a bequest was a valid tax even if the amount of the bequest included bonds statutorily exempt from taxation); *Plummer v. Coler*, 178 U.S. 115, 117 (1900) (permitting federal estate tax under the same rationale as *Murdock* where statute exempted federal bonds from "all taxes or duties of the United States, as well as from taxation in any form by or under state, municipal, or local authority . . . .");[8] *United States Trust Co. v. Helvering*, 307 U.S. 57,

---

[8]*Murdock* and *Plummer* were decided on the same day, May 14, 1900. In *Murdock*, the Court discussed *Plummer* and stated that in that case the Court was primarily "dealing with the sovereign power of a state to tax property within her own limits."  178 U.S. at 146.

60 (1939) (relying on *Murdock* and *Plummer* to hold that an exemption for War Risk Insurance from "all taxation" did not exempt the insurance from federal estate tax)). From these cases, the Court surmised that "on the rare occasions when Congress has exempted *property* from estate taxation it has generally adverted explicitly to that tax, rather than generically to 'all taxation.'" *Wells Fargo*, 485 U.S. at 356 (emphasis added) (quotation marks and citation omitted).

According to plaintiffs and the district court in this case, because *Wells Fargo* and the cases it relies upon interpret statutes exempting property from "all taxation," "all taxes," or "taxation in any form," it necessarily follows that the statutes in this case, exempting defendants from "all taxation," must be interpreted in the same manner. Plaintiffs also argue that *Wells Fargo* employed a "nature and effect of the tax" inquiry, which resulted in the conclusion that the exemption in *Wells Fargo* did not apply because the tax was not on the exempt property (the Notes), rather, it was on a privilege of transferring that property. We find these arguments without merit for several reasons.

*First*, plaintiffs' argument would require us to stretch *Wells Fargo* beyond its clear language and beyond the precedents upon which it is based. While it is true that *Wells Fargo* says that the phrase "all taxation" had an understood meaning, contrary to plaintiffs' argument, that understood meaning applied to an "exemption *of property* from all taxation . . .," *Wells Fargo*, 485 U.S. at 355 (emphasis added), not an exemption of an entity. Moreover, neither the State nor the Counties submitted any evidence specific to the statutes here, *e.g.*, legislative history, that would suffice to overcome the plain language of the statute and establish that Congress used "all taxation" in some more specialized way. *Hoge*, 384 F.3d at 246.

*Second*, plaintiffs have not explained why, if *Wells Fargo* is in fact supposed to apply not only to property exemptions but also to entity exemptions, the case fails to discuss or even mention *Bismarck*, or for that matter any of the Supreme Court's other

earlier entity exemption cases.[9]  If the 1988 *Wells Fargo* decision was in some fashion altering the legal landscape with respect to how courts should interpret Congress' exemptions of entities from "all taxation," it seems likely that the Court would have discussed, or at least mentioned, its several prior decisions on the issue.

*Third*, even assuming a "nature and effect of the tax" inquiry is appropriate here, and that we should be looking at whether the tax falls on the exempt entity or in the alternative on some privilege, plaintiffs' argument that the tax here does not fall on defendants is inadequate in the face of the plain language of the Michigan statutes. Those statutes expressly state that the transfer taxes are laid directly on defendants.  *See* MICH. COMP. LAWS § 207.502(2) ("The tax shall be upon the person who is the seller or grantor."); § 207.523(2) ("The person who is the seller or grantor of the property is liable for the tax imposed under this act.").

*Fourth*, carrying plaintiffs' argument to its logical conclusion would lead to a somewhat absurd result.  Assuming the distinction between direct taxes and excise taxes matters in the context of entity exemptions, plaintiffs reading of the statute would mean that when Congress exempts an entity from "all taxation" it is only exempting that entity from direct taxes.  The Supreme Court has recently reaffirmed there are only three types of direct taxes: capitations (taxes paid by every person "without regard to property, profession, or any other circumstance"), taxes on personal property, and taxes on real property.  *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2598-99 (2012). The transfer taxes here are clearly not capitations, and the statutes here separately provide an exclusion for taxes directly on real property.  Accordingly, the only direct tax remaining would be a tax on personal property.  We doubt that Congress would have said defendants were exempt from "all taxation" if it only meant they were exempt from personal property taxes.  This cannot be correct and this conclusion is not supported by the plain language of the statute.

---

[9]*See Fed. Land Bank of New Orleans v. Crosland*, 261 U.S. 374 (1923); *Pittman v. Home Owners' Loan Corp.*, 308 U.S. 21 (1939); *Laurens Fed. Sav. & Loan Ass'n v. S.C. Tax Comm'n*, 365 U.S. 517 (1961).

Accordingly, we **VACATE** the district court's decision and **REMAND** with instructions to enter summary judgment for defendants.