**COUNTY OF GENESEE and Deborah Cherry, Plaintiffs,**

v.

**GREENSTONE FARM CREDIT SERVICES, ACA, and GreenStone Farm Credit Services, FLCA, Defendants.**

**Case No. 12–14460.**

United States District Court, E.D. Michigan, Southern Division.

Sept. 11, 2013.

---

Kenneth J. Robinson, Bloomfield Hills, MI, Elizabeth A. Favaro, William H. Horton, Giarmarco, Mullins & Horton, P.C., Troy, MI, for Plaintiff.

Christian E. Meyer, Warner Norcross & Judd LLP, Grand Rapids, MI, Homayune A. Ghaussi, Warner, Norcross, Southfield, MI, for Defendants.

## OPINION AND ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

DAVID M. LAWSON, District Judge.

This matter is before the Court on cross motions for summary judgment. The two defendants, one (GreenStone Farm Credit Services, FLCA) being a fully owned subsidiary of the other (GreenStone Farm Credit Services, ACA), are federally chartered lending institutions of the Farm Credit System. The plaintiffs are a class of local governments consisting of several counties in Michigan and Wisconsin. The plaintiffs allege in their complaint that the defendants have failed to pay the transfer tax on real estate when the defendants have recorded deeds on property recov-

ered in foreclosure proceedings and conveyed to subsequent purchasers. The defendants contend that they are exempt from such taxes under federal law and due to their status as federal instrumentalities. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(f)(2).

This case presents a pure question of federal statutory construction; there are no facts in dispute. The controlling legal question is squarely answered by a recent decision of the United States Court of Appeals for the Sixth Circuit construing a parallel statute with nearly identical language and effect. *See Cnty. of Oakland v. Fed. Housing Fin.Agency,* 716 F.3d 935 (6th Cir.2013). Because the statute under which the defendants are chartered plainly grants immunity from the state taxes sought by the plaintiffs, and because that law, though expressly mentioning only one defendant, logically must apply to both, the Court will grant the defendants' motion for summary judgment, deny the plaintiffs' motions, and dismiss the complaint with prejudice.

## I.

Both Michigan and Wisconsin impose a tax upon individuals and entities that convey an interest in real property when the instrument of conveyance—the deed, mortgage, or other conveyance—is recorded with the county register of deeds to document the transfer. Mich. Comp. Laws § 207.502 (establishing a state transfer tax); Wis. Stat. § 77.22 (same); Mich. Comp. Laws § 207.523 (imposing a county transfer tax). The obligation to pay the tax is "upon the person who is the seller or grantor." Mich. Comp. Laws § 207.502(2); *see also* Wis. Stat. § 77.22; Mich. Comp. Laws § 207.523(2). The amount of the tax is based on the value of the conveyance, usually measured by the amount of the consideration.

The defendants, GreenStone Farm Credit Services, FLCA (GreenStone FLCA) and GreenStone Farm Credit Services, ACA (GreenStone ACA), are member-owned cooperative lending institutions that provide credit services to members for agricultural purposes. They operate in several Michigan and Wisconsin counties. The defendants regularly secure their loans with real estate mortgages. When mortgages are foreclosed, the defendants take title to the properties via a sheriff's deed, and they convey the properties to new buyers via warranty deeds. Those deeds are recorded in the various county register of deeds offices.

The plaintiffs are a class consisting of all counties in the State of Michigan, less one opt out, and ten counties in the State of Wisconsin (eleven class counties minus one opt out), which together comprise almost the entire geographic area in which the defendants operate. They argue that when the defendants foreclose on property and later sell it to a new owner, they act as the grantor or seller in the second transaction, and they therefore must pay the taxes imposed by these statutes upon the recording of the deed of sale. The defendants have not paid transfer taxes, and the plaintiffs have sued to collect it. The defendants contend that they are exempt from state and local taxation as federal instrumentalities. More persuasively, they also contend that they are exempt from such taxes under a federal statute that immunizes federally chartered agencies from the burden of state taxes. That statute states:

Each Federal land bank association and the capital, reserves, and surplus thereof, and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes on real estate held by a Federal land bank association to the same extent, according to its value, as other similar property held by other persons is taxed. 12 U.S.C. § 2098.

The questions presented by this statutory immunity argument are whether the defendants are federal land bank associations, and whether the statute extends to the transfer taxes the plaintiffs have sued to collect.

The named plaintiffs filed their complaint on October 9, 2012 and sought class certification on February 15, 2013. The Court conditionally certified the class on April 5, 2013 and allowed the plaintiffs until June 21, 2013 to serve notice on the class. The class as certified includes all counties in Michigan and eleven counties in Northeastern Wisconsin, which are all of the counties within which the defendants are chartered to operate as federal agricultural lending cooperatives. Only Otsego County, Michigan and Door County, Wisconsin elected to opt out of the class. Both sides have filed motions for summary judgment.

## II.

█ The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir.2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: when this Court considers cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir.2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties have not seriously contested the basic facts of the case. The main issue centers on the defendants' status and questions of statutory construction. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir.2009).

The Michigan plaintiffs acknowledge that they may not collect transfer taxes on "[w]ritten instruments which this state is prohibited from taxing under the constitution or statutes of the United States." Mich. Comp. Laws §§ 207.505(c), 207.526(c). The defendants argue that federal law provides such an exemption.

## A.

█ The immunity from taxes conferred by 12 U.S.C. § 2098 extends to "Federal land bank association[s]." The plaintiff counties argue that GreenStone FLCA is not covered by that statute because it is a

"federal land credit association" and not a "federal land bank association" as described in the statute. It appears that GreenStone ACA does not put much stock in the idea that it falls within the terms of the statute as a "federal land bank association," and instead puts greater weight on the argument that it is exempt as a federal instrumentality. After reviewing the history of the federal Farm Credit System and the institutions that have arisen and evolved under the Farm Credit Act, 12 U.S.C. § 2001 *et seq.*, the Court concludes that both institutions are entitled to immunity from taxes under section 2098.

According to its annual report, Green-Stone ACA's subsidiaries include Green-Stone Farm Credit Services, FLCA and GreenStone Farm Credit Services, PCA. GreenStone ACA owns all the stock of the subsidiaries. The institutions borrow money from the supervising federal Farm Credit Bank for the region and provide financial services to their members. "The FLCA makes secured long-term agricultural real estate and rural home mortgage loans and provides lease financing options. The ACA and PCA make short-term and intermediate-term loans and provide lease financing options for agricultural production or operating purposes.... [T]he ACA holds all short-term and intermediate-term loans and the PCA has no assets." Pl.'s Opp. to Def.'s Mot. for Summ. J., Ex. B, GreenStone Farm Credit Services, ACA Annual Report 2011 at 27. Neither of the institutions is designated as a "federal land bank association."

However, GreenStone ACA and Green-Stone FLCA are federally charted institutions within the Farm Credit System, which is regulated by the Farm Credit Administration ("FCA"). The FCA was created in 1916 to regulate the system. It underwent major restructuring in the late 1980s in order to respond to the devastating financial impact of the recession of the early 1980s, when Congress passed the Agricultural Credit Act of 1987, (1987 Act) Pub.L. 100–233, 101 Stat. 1568 (codified at 12 U.S.C. § 2001 *et seq.* (Supp.1989)). The changes wrought by that legislation were described well by the court in *Buckeye Production Credit Ass'n v. United States*, 792 F.Supp. 827 (D.D.C.1990):

The 1987 Act extensively reorganized the system, requiring the merger of some institutions, authorizing the mergers of others, and providing a new line of credit to guarantee bonds issued by the System. The legislation mandated the merger of two categories of banks, Federal Land Banks (FLBs) (which historically provided long-term financing to farmers) and Federal Intermediate Credit Banks (FICBs) (which historically raised capital for short and intermediate loans to farmers). The resulting institutions are called Farm Credit Banks (FCBs). Agricultural Credit Act of 1987, § 410, Pub.L. No. 100–233, 101 Stat. 1637, as amended, Pub.L. No. 100–399, 102 Stat. 999 (1988) (codified at 12 U.S.C. § 2011 note (Supp.1989)). Each district within the Farm Credit System is served by a FCB. The FCBs exercise a degree of supervisory authority over the associations that operate within the districts. *See* 1987 Act, §§ 1.3, 1.5, Pub.L. No. 100–233, 101 Stat. 1568, 1622–24 (1988) (codified at 12 U.S.C. §§ 2011–2013).

Prior to the 1987 Act, three different categories of Farm Credit System banks operated in each of the 12 geographic districts. First, the Federal Land Banks (FLBs) raised capital and provided long-term loans to farmers through their affiliated Federal Land Bank Associations (FLBAs) (which also serviced the bank loans). Second, the Federal Intermediate Credit Banks (FICBs), raised capital for intermedi-

ate- and short-term loans to farmers. The FICBs loaned their funds to affiliated Production Credit Associations (PCAs), which had the authority to make and service direct loans (short- and intermediate-term) to farmers. Finally, a bank for cooperatives, the third category of institution within the farm credit system, extended credit to marketing, purchasing, and business service cooperatives. The nation-wide system comprised 37 banks and nearly 800 affiliated FLBAs and PCAs, all of which were overseen by the Farm Credit Administration (FCA).

As a result of the 1987 Act, the Federal Land Bank Associations (FLBAs) were transformed into direct lending agencies (now called Federal [Land] Credit Associations or FLCAs); similarly, PCAs were granted more independence. In addition, all FLCAs (formerly FLBAs) and PCAs which operated within "substantially the same geographic territory" were directed to submit a plan for voluntary merger to their stockholders. 1987 Act, § 411, Pub.L. No. 100–233, 101 Stat. 1568, 1638, as amended, Pub.L. No. 100–399, 102 Stat. 999 (codified at 12 U.S.C. § 2071 note (1988)). However, the plan had to be approved by the supervising FCB and the FCA prior to being submitted to the stockholders of these institutions. *Id.* If the associations voted to merge, the resulting association, an Agricultural Credit Association (ACA), would be formed. An ACA possesses the combined lending authority of a PCA and FLCA, i.e. the authority to make short-term as well as long-term loans directly to farmers.

*Buckeye,* 792 F.Supp. at 828–29.

GreenStone FLCA was formed as a federal land bank association. As the *Buckeye* court noted, under the Agricultural Credit Act of 1987 all FLBAs were redesignated federal land credit associations (FLCAs). As FLCAs, they continue to be regulated under the same statutes that governed them before the conversion. According to the defendants, GreenStone ACA, an agricultural credit association, was formed by the merger of GreenStone Farm Credit Services, PCA (production credit association) and GreenStone Farm Credit Services, FLCA. The combined entity operates as one unit and issues a single, consolidated annual report. Those facts are not contested.

The merger of those two associations was expressly authorized by the Agricultural Credit Act of 1987. 12 U.S.C. § 2279c–1(a) ("Two or more associations within the same district, whether or not organized under the same subchapter of this chapter, may merge into a single entity...."). The merger statute provides that a merged association "shall ... possess all powers granted under this chapter to the associations forming the merged association; and ... be subject to all of the obligations imposed under this chapter on the associations forming the merged association." 12 U.S.C. § 2279c–1(b)(1). GreenStone ACA, as the combination of both the FLCA and PCA, reports the activities of those fully owned subsidiaries as its own.

The history surrounding the passage of the Agricultural Credit Act of 1987 described by the *Buckeye* court undermines the plaintiffs' argument that the FLCA defendant is not covered by 12 U.S.C. § 2098. As noted above, the term FLCA is simply the new name for FLBAs adopted under the 1987 Act, and the FLCA entities that exist today are all former FLBAs. Those entities continue to be regulated under all of the same laws under which they were created; the Farm Credit Administration explained the nomenclature in its regulations governing the

transition of member institutions from FLBA to FLCA form: "The term Federal land credit association [FLCA] refers to a Federal land bank association that has received a transfer of direct long-term real estate lending authority pursuant to section 7.6 of the Act [12 U.S.C. § 2279b]." 12 C.F.R. § 619.9155. The tax immunity established by 12 U.S.C. § 2098 applies to defendant GreenStone FLCA.

The parent company, GreenStone ACA, is an agricultural credit association. Of course, there is no mention of an "agricultural credit association" in 12 U.S.C. § 2098. In fact, that term is not used anywhere in the Farm Credit Act, including in the merger statute that allows the formation of ACAs. The section of the law that authorized the merger of FLCAs and PCAs only refers to a "merged association," without designating the "merged" association as being in any category distinct from those of its component parts. 12 U.S.C. § 2279c–1(a) ("Two or more associations within the same district, whether or not organized under the same subchapter of this chapter, may merge into a single entity (hereinafter in this subchapter referred to as a 'merged association')"). The term "ACA" was adopted by the Farm Credit Administration to distinguish associations that have merged from those that continue in their original, separate forms as either an FLCA or a PCA. *See* 12 C.F.R. § 619.9015 ("Agricultural credit associations are associations created by the merger of one or more Federal land bank associations or Federal land credit associations and one or more production credit associations and which have received a transfer of authority to make and participate in long-term real estate mortgage loans pursuant to section 7.6 of the Act."); 12 C.F.R. § 619.9050 ("The term associations includes (individually or collectively) Federal land bank associations, Federal land credit associations, production credit associations, and agricultural credit associations.").

In *United States v. Farm Credit Services of Fargo, ACA,* 1998 WL 1776582 (D.N.D. Sept. 29, 1998), the district court considered whether the express federal tax exemption granted to an ACA's FLBA subsidiary applied to the ACA when it continued the activities formerly carried out by the FLBA. The *Fargo* court held that the exemption in 12 U.S.C. § 2098 carried over to the ACA entity formed by the merger of an FLBA and PCA, because the merger statute necessarily incorporated all of the provisions that applied to and governed the previously separate entities. The court reasoned:

As previously mentioned, 12 U.S.C. § 2098 specifically grants an income tax exemption to FLBAs whose income is derived from providing and servicing long term real estate loans. This Court holds that this exemption from taxation applies equally to the restructured Fargo ACA which has been formed by merger pursuant to 12 U.S.C. § 2279c–1. Fargo ACA is merely the continuation of the local FLBA and PCA with identical powers and obligations.

Section 2279c–1 provides that the restructured ACA shall "possess all powers granted under this chapter," and likewise is "subject to all the obligations imposed under this chapter on the Associations' forming the merged association." Since no corporate powers or obligations unique to the ACA are provided, it is obvious that the ACA can only function under the auspices of the incorporated sections of the chapter explicitly referenced, specifically those sections applicable to the pre-merger entities. This would clearly include the taxation provisions for FLBAs pursuant to 12 U.S.C. § 2098.

To conclude that Congress intended to deny the continuance of the exemption from federal income tax on income earned from long term lending activities, which has been exempt since 1916, would be illogical and absurd. *See* The Federal Farm Loan Act, Pub.L. No. 158, § 26, 39 Stat. 360, 380 (1916). This is especially so upon a simple reading of the Act of 1987: Congress means to provide financial assistance to the agricultural industry, not create obstacles. *Fargo,* 1998 WL 1776582, at *2–3.

The reasoning of the *Fargo* decision is compelling, and the Court adopts it here. Just as in *Fargo,* the state tax exemption granted to a former FLBA (now FLCA) by 12 U.S.C. § 2098 must apply with equal force to a merged association that "is merely the continuation of the local [FLCA] and PCA with identical powers and obligations." It would be illogical and absurd to construe the merger statute as wiping out in one stroke the broad and express exemption from state taxes that the separate entities had enjoyed since their first authorization in 1916, particularly since the merger statute makes no mention of—indeed, does not even hint at—any change in the tax status of those entities as a result of their merger. Congressional silence is not enough to effectuate a change in the tax structure set out in the Farm Credit Act. *See Dir. of Revenue of Missouri v. CoBank ACB,* 531 U.S. 316, 321–22, 324–25, 121 S.Ct. 941, 148 L.Ed.2d 830 (2001). If Congress had meant to strip from "merged associations" the broad state tax exemption enjoyed by FLCAs and PCAs for more than seventy years, then it surely would have mentioned that change when it enacted the merger statute, rather than leaving such a sweeping upset to be implied from the language—or absence of language—in such a narrow provision. Such an interpretation would directly contradict the plain text of 12

U.S.C. § 2279c–1, which states that a "merged association" assumes all of the powers and obligations of its constituents.

The Court concludes, therefore, that defendant GreenStone ACA enjoys the same immunity from state and local taxes conferred by 12 U.S.C. § 2098 as FLBAs and FLCAs.

## B.

■ The remaining question is whether the exemption "from Federal, State, municipal, and local taxation" conferred by 12 U.S.C. § 2098 extends to the transfer taxes that the plaintiffs seek to collect. After the Sixth Circuit's decision in *County of Oakland v. Fed. Housing Fin. Agency,* 716 F.3d 935 (6th Cir.2013), that question must be answered in the affirmative.

In *County of Oakland,* the Sixth Circuit confronted the same issue of statutory construction that now is before this Court: "whether defendants' exemptions from 'all [state and local] taxation' include Michigan State and County real estate transfer taxes." *Id.* at 939. In that case the Sixth Circuit construed the statute that granted a broad tax exemption to the Federal Housing Finance Agency (FHFA), which is the federal agency created in 2008 to reform the operations or wind up the affairs of federally chartered mortgage loan guaranty corporations Fannie Mae and Freddie Mac, following the infamous financial collapse of those entities:

The [FHFA], including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency [as Conservator] shall be subject to State, territorial, county, municipal, or local taxation to the same extent

according to its value as other real property is taxed. . . .

12 U.S.C. § 4617(j)(2). The language of that provision is identical to the language in 12 U.S.C. § 2098, except that section 2098 refers only to "taxation imposed" rather than "all taxation imposed." The plaintiffs here, in addressing *County of Oakland,* do not contend that the omission of the word "all" is material. The cases suggest the same conclusion. In *Federal Land Bank of St. Paul v. Bismarck Lumber Co.,* 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941), the Supreme Court construed a section of the Federal Farm Loan Act of 1916 that exempted federal land banks "from . . . State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank. . . ." *Bismarck,* 314 U.S. at 96 n. 1, 62 S.Ct. 1. The Court held that "[t]he unqualified term 'taxation' [in the exemption] clearly encompasse[d] within its scope a sales tax. . . ." *Id.* at 99, 62 S.Ct. 1. The omission of the word "all" did not restrict the scope of the exemption. That prompted the court of appeals in *County of Oakland* to hold "that when Congress broadly exempts an entity from 'taxation' or 'all taxation' it means all taxation." *County of Oakland,* 716 F.3d at 942.

Likewise, 12 U.S.C. § 2098, by its plain terms, provides an immunity of the same scope as that of the FHFA charter statute (i.e., an immunity from all state taxes except those expressly allowed by the carve out for real estate property taxes assessed *ad valorem*). Section 2098 exempts the defendants in this case from the real estate transfer tax the plaintiffs seek to collect.

The court of appeals in *County of Oakland* reached the same conclusion via another route as well. As the court noted, "the [real estate] transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property." *Id.* at 939 n. 6. The court then observed that " '[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.' " *Id.* at 940 (quoting *United States v. Johnson,* 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000)). The court declined to read into the statute an exception for state and county real property transfer taxes. The court then explained that the plain text of the federal statute compelled its holding that the FHFA's express exemption must include immunity from the Michigan transfer taxes. The same conclusion must apply to the defendants here.

Finally, the plaintiffs argue that Green-Stone ACA must be subject to the state transfer taxes because it reports "taxes paid" in its annual report, and presumably that amounts to an admission. That argument is ungrounded, because it is undisputed that PCAs (unlike FLCAs) are subject to federal income tax on the income derived from their short-term lending activities under 12 U.S.C. § 2077. *United States v. Farm Credit Services of Fargo, ACA,* 1998 WL 1776582, at *1 (D.N.D. Sept. 29, 1998) ("[U]nlike FLBAs, PCAs are not exempt from federal income taxation."). Moreover, the annual report does not specify the type of "taxes" that were paid, but it seems evident that those taxes likely comprise federal income tax for which the ACA is liable due to the operations of the PCA subsidiary, and perhaps also include *ad valorem* property taxes that the FLCA entity must pay under the carve out in 12 U.S.C. § 2098.

C.

The defendants also argue that they are exempt from paying taxes to state and

local governments because they are federally chartered institutions that are federal instrumentalities, "so closely connected to the Government that the two cannot realistically be viewed as separate entities." *United States v. New Mexico,* 455 U.S. 720, 735, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982). That argument necessarily invokes the Supremacy Clause; it is a constitutional argument that traces its roots to *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 425–37, 4 L.Ed. 579 (1819). *See Commodities Export Co. v. Detroit Int'l Bridge Co.,* 695 F.3d 518, 528–29 (6th Cir.2012).

As noted earlier, Michigan law exempts from the transfer tax all written instruments on which the state is prohibited by federal statute from imposing a tax. *See* Mich. Comp. Laws §§ 207.505(c), 207.526(c). The Wisconsin exemption applies only to an "instrumentality, agency or subdivision of" the United States. Wisc. Stat. § 77.25(2). However, the defendants need not be an instrumentality of the federal government to enjoy the exemption under 12 U.S.C. § 2098. For that reason, this Court need not reach the constitutional question, because the case can be resolved on the basis of the federal statutory issues discussed above.

### III.

The Court concludes that the defendants, GreenStone Farm Credit Services, FLCA and GreenStone Farm Credit Services, ACA, enjoy the exemption from state and local taxation conferred by 12 U.S.C. § 2098, and that statute prohibits the collection of the real estate transfer taxes sought by the plaintiffs.

Accordingly, it is **ORDERED** that the plaintiffs' motions for summary judgment [dkt. # 25, 34] are **DENIED.**

It is further **ORDERED** that the defendants' motion for summary judgment [dkt. # 24] is **GRANTED.**

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE.**