PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

Nos. 13-2163/13-2501/13-3175
———

DELAWARE COUNTY, PENNSYLVANIA;
CHESTER COUNTY, PENNSYLVANIA,
                              Appellants No. 13-2163

v.

FEDERAL HOUSING FINANCE AGENCY AS
CONSERVATOR FOR FEDERAL
NATIONAL MORTGAGE ASSOCIATION AND
FEDERAL HOME LOAN MORTGAGE
CORPORATION; FEDERAL MORGTGAGE
ASSOCIATION, a/k/a FANNIE MAE;
FEDERAL HOME LOAN MORTGAGE CORPORATION,
a/k/a FREDDIE MAC


UNITED STATES OF AMERICA,
                              Intervenor in USCA


———

1

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

(E.D. Pa. No. 2-12-cv-04554)
District Judge: Honorable Gene E. K. Pratter
_____


CAPE MAY COUNTY, NEW JERSEY,
a Municipal Corporation; RITA MARIE FULGINITI,
County Clerk and Registar of Deeds and Mortgages in and for
Cape May County, New Jersey on behalf of themselves and
all others similarly situated,
                              Appellants No. 13-2501


v.


FEDERAL NATIONAL MORTGAGE ASSOCIATION;
FEDERAL HOME LOAN MORTGAGE CORPORATION;
FEDERAL HOUSING FINANCE AGENCY

UNITED STATES OF AMERICA,
                              Intervenor in USCA
_____


On Appeal from the United States District Court
for the District of New Jersey

(D. N.J. No. 1-12-cv-04712)
District Judge: Honorable Robert B. Kugler
_____

EVIE RAFALKO MCNULTY RECORDER OF DEEDS OF
LACKAWANNA COUNTY, PENNSYLVANIA,

Appellant in No. 13-3175

v.

FEDERAL HOUSING FINANCE AGENCY, as conservator
for Federal National Mortgage Association
and Federal Home Loan Mortgage Corporation; FEDERAL
NATIONAL MORTGAGE ASSOCIATION,
a federally chartered corporation; FEDERAL HOME LOAN
MORTGAGE CORPORATION, a
federal chartered corporation

UNITED STATES OF AMERICA,

Intervenor in USCA

_____

On Appeal from the United States District Court for the
Middle District of Pennsylvania

(M.D. Pa. No. 3-12-cv-01822)
District Judge:  Honorable Malachy E. Mannion

_____

Argued January 22, 2014
Before:  FUENTES and FISHER, *Circuit Judges*, and
STARK,[*] *District Judge*.

(Filed: March 18, 2014)

---

[*]The Honorable Leonard P. Stark, District Judge for
the United States District Court for the District of Delaware,
sitting by designation.

Jeremy J. Brandon, Esq.  ARGUED
Susman Godfrey
901 Main Street
Suite 5100
Dallas, TX 75202
   *Attorney for Appellants Delaware County, Chester County of Pennsylvania, Cape May County, Rita Marie Fulginiti and Lackawana County Recorder of Deeds.*

Nicholas E. Chimicles, Esq.
Alison G. Gushue, Esq.
Benjamin F. Johns, Esq.
Joseph G. Sauder, Esq.
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041
   *Attorneys for Appellants Delaware County and Chester County of  Pennsylvania*

Lewis B. April, Esq.
Jeffrey Ryan Lindsay, Esq.
Cooper, Levenson, April, Niedelman & Wagenheim
1125 Atlantic Avenue
3rd Floor
Atlantic City, NJ 08401

Bryan L. Clobes, Esq.
Cafferty Faucher
1717 Arch Street
Suite 3610
Philadelphia, PA 19103
*Attorneys for Appellants Cape May County and Rita Marie Fulginiti*

Jennifer E. Agnew, Esq.
Trujillo, Rodriguez & Richards
1717 Arch Street
Suite 3838
Philadelphia, PA 19103

Warren T. Burns, Esq.
Katherine L.I. Hacker, Esq.
Terrell W. Oxford, Esq.
Susman Godfrey
901 Main Street
Suite 5100
Dallas, TX 75202

Carol H. Lahman, Esq.
Larry D. Lahman, Esq.
202 West Broadway Avenue
Enid, OK 73701

Todd J. O'Malley, Esq.
O'Malley & Langan
201 Franklin Avenue
Scranton, PA 18503

Ira N. Richards, Esq.
Trujillo, Rodriguez & Richards
1717 Arch Street
Suite 3838
Philadelphia, PA 19103

Elaine A. Ryan, Esq.
Patricia N. Syverson, Esq.
Bonnett, Fairbourn, Friedman & Balint
2325 East Camelback Road
Suite 300
Phoenix, AZ 85016

Howard J. Sedran, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106

Joseph Siprut, Esq.
17 North State Street
Suite 1600
Chicago, IL 60602

Stewart M. Weltman, Esq.
Suite 364
53 West Jackson
Chicago, IL 60604

*Attorneys for Lackawana County Recorder of Deeds*

Scott J. Etish, Esq.
Gibbons
18th & Arch Streets
1700 Two Logan Square
Philadelphia, PA 19103

Michael A. Johnson, Esq.  ARGUED
Dirk Phillips, Esq.
Arnold & Porter
555 Twelfth Street, N.W.
Washington, DC 20004
       *Attorneys for Appellees Federal Housing Finance*
*Agency, Federal National Mortgage Association, RP, AKA*
*Fannie Mae and Federal Home Loan Mortgage Corp, AKA*
*Freddie Mac*

Howard N. Cayne, Esq. No. 13-2501
Michael A. Johnson, Esq.
Dirk Phillips, Esq.
Asim Varma, Esq.  No. 13-3175
Arnold & Porter
555 Twelfth Street, N.W.
Washington, DC 20004

Jared P. Duvoisin, Esq. No. 13-2501
Tompkins, McGuire, Wachenfeld & Barry
100 Mulberry Street
Four Gateway, Suite 5
Newark, NJ 07102
       *Attorneys for Appellee Federal Housing Finance*
*Agency*

Michael D. Leffel, Esq.
Foley & Lardner
150 East Gilman Street
Suite 5000
Madison, WI 53703
*Attorney for Appellee Federal National Mortgage*
*Association, RP, AKA Fannie Mae*

Michael J. Ciatti, Esq.
King & Spalding
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006

Nicholas Deenis, Esq.
Joseph T. Kelleher, Esq.
Stradley, Ronon, Stevens & Young
30 Valley Stream Parkway
Great Valley Corporate Center
Malvern, PA 19355-0000

Jill L. Nicholson, Esq.
Foley & Lardner
321 North Clark Street
Suite 2800
Chicago, IL 60654

Ann Marie Uetz, Esq.
Foley & Lardner
500 Woodward Avenue
One Detroit Center, Suite 2700
Detroit, MI 48226

William T. Mandia, Esq. No. 13-3175
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
   *Attorneys for Appellee Federal National Mortgage
Association, RP, AKA Fannie Mae. and Federal Home Loan
Mortgage Corp, AKA Freddie Mac*

Patrick J. Urda, Esq.  ARGUED
United States Department of Justice
Tax Division
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044
   *Attorney for Intervenor-appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

In this consolidated appeal, we are asked to interpret the scope of a statutory tax exemption and to determine if, in enacting that exemption, Congress acted unconstitutionally.

9

For the reasons to be discussed, we will affirm.

I.

A.

Consolidated for our review in this appeal are three District Court actions, brought in the Eastern and Middle Districts of Pennsylvania and the District of New Jersey. Appellants in No. 13-2501 are Cape May County, New Jersey, and County Clerk Rita Marie Fulginiti. Appellants in No. 13-2163 are Delaware and Chester Counties, Pennsylvania. Appellant in No. 13-3175 is Evie Rafalko McNulty, Recorder of Deeds for Lackawanna County, Pennsylvania. We will refer to these parties, collectively, as "Appellants." Appellees are the Federal National Mortgage Association ("Fannie Mae" or "Fannie"), the Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Freddie"), and the Federal Housing Finance Agency (the "FHFA"). For reasons that we will discuss, Appellees are identically situated

for purposes of this appeal. We will therefore refer to them, collectively, as the "Enterprises." The United States was not involved in these cases at the district court level, but we granted its request for leave to intervene on appeal in the District of New Jersey and the Eastern District of Pennsylvania cases, to defend the constitutionality of the tax exemptions at issue here. The United States appears as *amicus curiae* with respect to the Middle District of Pennsylvania case.

Fannie Mae and Freddie Mac are federally-chartered but privately owned corporations that issue publicly traded securities. Congress created Fannie and Freddie to establish and stabilize secondary markets for residential mortgages in order to "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716 (Fannie Mae); *see also* 12 U.S.C. § 1451 note (Freddie Mac). Fannie and Freddie pursue their mission by purchasing mortgages from third-party lenders,

pooling them together and selling securities backed by those mortgages. In the wake of the housing market collapse of 2008, Fannie and Freddie found themselves owning a great many defaulted and overvalued subprime mortgages. They went bankrupt, and on July 30, 2008, Congress created the FHFA to act as conservator for Fannie and Freddie. "A conservatorship is like a receivership, except that a conservator, like a trustee in a reorganization under Chapter 11 of the Bankruptcy Code, tries to return the bankrupt party to solvency, rather than liquidating it." *DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 798 (7th Cir. 2013) (discussing the FHFA conservatorship in the context of a lawsuit identical to the instant appeal). The FHFA is thus a party to this litigation in its role as conservator, but for purposes of our analysis, all three entities are identically situated.

Congress exempted the Enterprises from all state and

local taxation.  Fannie Mae's exemption statute states:

> [Fannie Mae], including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, . . . or by any county, . . .  except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).  Both Freddie Mac and the FHFA's exemption statutes are materially identical to Fannie's. 12 U.S.C. § 1452(e) (Freddie Mac); 12 U.S.C. § 4617(j)(2) (FHFA).  The Enterprises are thus exempt from "all taxation" by any state or local government, with the exception that they are still subject to taxes on real property.

Pennsylvania and New Jersey, like other states, tax the transfer of real estate.  In Pennsylvania, each "person who makes, executes, delivers, accepts or presents for recording any document" must pay a tax in the amount of one percent of the value of the real estate transferred.  72 Pa. Cons. Stat.

13

Ann. § 8102-C. "Document" means "[a]ny deed, instrument or writing which conveys, transfers, devises, confirms or evidences any transfer or devise of title to real estate in this Commonwealth." *Id.* § 8101-C. Pennsylvania also allows local authorities to impose real estate transfer taxes. *Id.* § 8101-D.

Similarly, New Jersey law requires the grantor of a deed to pay a fee to the county recording officer "at the time the deed is offered for recording." N.J. Stat. Ann. § 46:15-7a. The fee consists of "(a) a State portion at the rate of $1.25 for each $500.00 of consideration or fractional part thereof recited in the deed, and (b) a county portion at the rate of $0.50 for each $500.00 of consideration or fractional part thereof so recited." *Id.* § 46:15-7a(1). Grantors must also pay a "supplemental fee" for each property conveyance or transfer. *Id.* § 46:15-7.1.

B.

Delaware and Chester Counties filed an amended complaint in the Eastern District of Pennsylvania on behalf of themselves and a putative class of all similarly situated counties in Pennsylvania, seeking a declaratory judgment that the Enterprises were not exempt from paying state and local real estate transfer taxes and a judgment awarding the proposed-class damages in the amount of the unpaid taxes. The Enterprises filed a motion to dismiss, which the District Court granted.

The District of New Jersey action proceeded similarly. Cape May County and its County Clerk filed an amended complaint on behalf of all New Jersey counties seeking declaratory relief and damages. After hearing argument on a motion to dismiss, the District Court dismissed the case.

Lackawanna County's Recorder of Deeds filed suit in the Middle District of Pennsylvania, on behalf of herself and

15

a putative class consisting of all similarly situated Pennsylvania counties, municipalities, and state entities, seeking a declaration that the Enterprises were subject to state and local transfer taxes, money damages, and other relief. The District Court granted the Enterprises' motion to dismiss. The Middle District of Pennsylvania action differed slightly from the other two, in that the District Court did not consider the constitutionality of the exemptions, which is why the United States appears only as *amicus curiae* with respect to that case.

Appellants in each case timely appealed, and we consolidated the cases for appellate review.

## II.

The District Courts had jurisdiction pursuant to 28 U.S.C. § 1331, because of the presence of a federal question. The District Courts also had jurisdiction pursuant to 12 U.S.C. § 1452(f), which provides for original district court

16

jurisdiction over all civil actions to which Freddie Mac is a party "without regard to amount or value" "nowithstanding . . . any other provision of law." 12 U.S.C. § 1452(f). We have jurisdiction over the District Courts' final orders of dismissal pursuant to 28 U.S.C. § 1291. We apply "a plenary standard of review to issues of statutory interpretation, and to questions regarding a statute's constitutionality." *United States v. Walker*, 473 F.3d 71, 75 (3d Cir. 2007).

## III.

Appellants present both statutory and constitutional challenges to the Enterprises' claimed tax exemptions. As we will discuss in detail below, we disagree with their arguments.

## A.

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). We presume that Congress expresses its intent

17

through the ordinary meaning of the words it uses. *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295, 302 (3d Cir. 2011). When that meaning is plain, our "sole function . . . – at least where the disposition required by the test is not absurd – is to enforce [the statute] according to its terms." *Id.* (quoting *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009)) (internal quotation marks omitted).

The Enterprises are statutorily exempt from "all taxation" imposed by the states or their local subdivisions, with one notable exception – the states may tax the Enterprises' real property. *See* 12 U.S.C. § 1723a(c)(2) (Fannie Mae); *id.* § 1452(e) (Freddie Mac); *id.* § 4617(j)(2) (FHFA). The Enterprises' charters do not define the words "all" or "taxation." "When words are left undefined, we have turned to 'standard reference works such as legal and general dictionaries in order to ascertain' their ordinary meaning." *Eid v. Thompson*, 740 F.3d 118, 123 (3d Cir. 2014) (quoting

*United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008)).

"All" of something is the "whole amount or quantity of" it; it is "every member or individual component," "the whole number or sum" of that thing. *Webster's Third New International Dictionary, Unabridged* 54 (1981). "Taxation" is the act of imposing a tax, and a tax is "[a] charge . . . imposed by the government on persons, entities, transactions or property to yield public revenue" and, in its broadest sense, "embraces all governmental impositions on the person, property, privileges, occupations, and enjoyment of the people, and include[s] duties, imposts, *and excises*." *Black's Law Dictionary* 1594, 1598 (9th ed. 2009) (emphasis added). Under the canon of statutory construction *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others"), the solitary exception subjecting the Enterprises to real property taxation implies strongly that they are exempt from all other types of taxes. *See In re Federal-*

*Mogul Global, Inc.*, 300 F.3d 368, 388 (3d Cir. 2002).

The Enterprises' exemption from taxation is thus clearly expansive. Fighting against such a capacious reading, Appellants urge that "all taxation" means something other than it says; that it is instead a term of art meaning only "direct" taxes. There are only three types of direct taxes: capitations, also known as poll taxes, which are fixed taxes levied on people, *see Black's*, *supra*, at 1596; taxes on real property; and taxes on personal property. *See Murphy v. I.R.S.*, 493 F.3d 170, 181 (D.C. Cir. 2007). The transfer taxes are not direct taxes but rather are an excise tax, an indirect tax "imposed on the manufacture, sale, or use of goods." *Black's*, *supra*, at 646. They tax the transfer of property, not the property itself.

In support of their argument, Appellants rely on the Supreme Court's decision in *United States v. Wells Fargo Bank*. There, the Court interpreted a provision of the Housing

Act of 1937 that gave state and local housing authorities the power to issue tax-free financing instruments, termed "Project Notes." 485 U.S. 351, 353 (1988); *see also Hennepin Cnty. v. Fed'l Nat. Mortg. Ass'n,* 933 F. Supp. 2d 1173, 1177 (D. Minn. 2013) (noting that the Project Notes were property issued by state and local housing authorities during the housing shortage of the 1930s), *aff'd* 742 F.3d 818 (8th Cir. 2014). Congress had exempted the Project Notes "from all taxation now or hereafter imposed by the United States." *Wells Fargo*, 485 U.S. at 355. Wells Fargo sought a refund of estate taxes paid on its Project Notes, arguing that the taxes fell within the ambit of "all taxation" from which the Notes were exempt. Rejecting Wells Fargo's argument, the Court observed that "[f]or almost 50 years after the Act's passage, it was generally assumed that this exempted the Notes from federal income tax, but not from federal estate tax." *Id.* at 353. The Court understood as a background principle against

which the Housing Act was passed that "an exemption *of property* from all taxation had an understood meaning: the property was exempt from *direct* taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." *Id.* at 355 (second emphasis in original). In Appellants' view, the Supreme Court's exegesis of the meaning of "all taxation" in *Wells Fargo* controls our interpretation here.

The flaw in this argument, as both the Enterprises and the United States observe, is that *Wells Fargo* involved an exemption of specific *property* from all taxation, whereas this case involves exemptions of *entities*. The estate tax that the Court considered in *Wells Fargo* was an excise tax on the *transfer* of property at death, and "transfer of the notes, as by bequest or sale, was not property and so could be taxed." *DeKalb County*, 741 F.3d at 800 (emphasis omitted). Contrary to Appellants' argument, the distinction between a

property exemption and an entity exemption renders *Wells Fargo* inapposite.

Rather, our interpretation is guided by *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941). In *Bismarck*, the Supreme Court considered whether a provision of the Federal Farm Loan Act that exempted Federal Land Banks from paying state taxes included a state sales tax on property. The relevant portion of the Farm Loan Act stated "[t]hat every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation." The Court determined that the "unqualified term 'taxation' used in [the Farm Loan Act] clearly encompasses within its scope a sales tax such as the instant one." *Id.* at 99.

The exemption in *Bismarck* is materially identical to the Enterprise exemptions in two important ways. First, in *Bismarck*, as here, the exemption applied to entities, not to specific property, unlike the exemption in *Wells Fargo*.

Second, like the transfer taxes at issue here, "a sales tax[] is an excise or privilege tax different in kind from a tax on property." *Sullivan v. United States*, 395 U.S. 169, 177 n.28 (1969). Both taxes are measured by reference to the value of the property involved in the transaction, and both are taxes on the privilege of transferring ownership of the property, not taxes on the property itself.

To date, three Courts of Appeals have considered and rejected Appellants' contention. In *DeKalb County*, the Seventh Circuit observed that the *Wells Fargo* "Court was saying that an exemption from property taxes, such as a tax on project notes, is not an exemption from transfer taxes as well, because a transfer tax is not a property tax even when the transfer is of property." 741 F.3d at 800. "Had the Supreme Court meant to hold that the term 'all taxation' means just property taxation – a very strange reading, equivalent to interpreting 'all soup' to mean 'all lobster

bisque' – it would have had to overrule [*Bismarck*]. . . . *Wells Fargo* does not even cite *Bismarck.*" *Id.* Similarly, in *County of Oakland v. Federal Housing Finance Agency*, the Sixth Circuit reversed the only court in the country to have agreed with Appellants' argument. 716 F.3d 935, 938 n.5 (6th Cir. 2013), *rev'g* 871 F. Supp. 2d 662 (E.D. Mich. 2012). The Sixth Circuit held that *Bismarck* controlled, and that Appellants' "argument would require us to stretch *Wells Fargo* beyond its clear language." *Id.* at 943.[1] The Eighth Circuit has ruled likewise. *See Hennepin Cnty.*, 742 F.3d at

---

[1] We also note the Sixth Circuit's observation that Appellants' argument would lead to absurd results. As noted *supra*, there are only three types of direct taxes: capitations, and taxes on real and personal property. "The transfer taxes here are clearly not capitations, and the statutes here separately provide an exclusion for taxes directly on real property . . .[;] the only direct tax remaining would be a tax on personal property." *Id.* at 943-44. It would be absurd for Congress to "exempt [the Enterprises] from 'all taxation' if it only meant they were exempt from personal property taxes. This cannot be correct and this conclusion is not supported by the plain language of the statute." *Id*. at 944.

822 ("We disagree with Hennepin County's argument that . . . [*Wells Fargo*] limited the meaning of 'all taxation' in an exemption statute to mean only 'all *direct* taxation'") (citation omitted; emphasis in original).[2]

Appellants' argument is fundamentally incompatible with the statutory text.  Accordingly, we will join our sister circuits, interpret the phrase "all taxation" to mean precisely what it says, and hold that the Enterprises are statutorily exempt from paying state and local real estate transfer taxes.

## B.

Before turning to Appellants' constitutional arguments, we pause briefly to consider their alternative

---

[2] The Fourth Circuit has also rejected an attempt to force the Enterprises to pay real estate transfer taxes. However, the court in *Montgomery County, Maryland v. Federal National Mortgage Association*, did not consider the "all taxation" question.  Rather, it considered only whether the real estate transfer taxes fell into the real property carve-out, and whether the Enterprises' exemptions were constitutional as applied to the transfer taxes. *See generally* 740 F.3d 914 (4th Cir. 2014).

statutory argument. They contend that even if the transfer taxes fall within the scope of "all taxation," the Enterprises are still not exempt because the transfer taxes fall within the exception for taxes on real property. We disagree.

As we previously noted, the Enterprises' statutory exemption from all taxation contains a single exception – they are not exempt from state and local taxes on real property. 12 U.S.C. § 1723a(c)(2) (Fannie Mae); *id.* § 1452(e) (Freddie Mac); *id.* § 4617(j)(2) (FHFA). Appellants posit that the transfer taxes are effectively taxes on real property because under Pennsylvania law an owner cannot perfect an interest in real property until the deed is recorded and the transfer taxes paid. Appellants' Br. at 25.[3]

We reject this argument as foreclosed by both United States Supreme Court and Pennsylvania Supreme Court

---

[3] Appellants do not make a similar argument under New Jersey law.

precedent, and as manifestly contrary to the well-recognized difference between direct and indirect taxes (the very difference, indeed, that Appellants rely upon so heavily in their principal statutory argument). In *Wells Fargo*, the Supreme Court recognized "the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied on the property itself." 485 U.S. at 355. The Pennsylvania real estate transfer tax is an excise tax because it "is not a tax on the real estate itself . . . [but a] tax [on] certain transactions pertaining to real estate." *Sablosky v. Messner*, 372 Pa. 47, 50 (1952) (discussing a prior version of the Pennsylvania transfer tax).

Appellants attempt to blur this clear distinction by arguing that the transfer taxes amount to direct real property taxes because they are calculated by reference to the value of the property, and because failure to pay the tax can result in

the creation of a lien on the property. We find neither contention persuasive. With respect to the former, the Supreme Court rejected a similar argument in *Southern Railway Co. v. Watts*, recognizing that "a privilege tax *is not converted to a property tax* because it is measured by the value of the property." 260 U.S. 519, 530 (1923) (emphasis added). With respect to the latter, the argument proves too much. Under Pennsylvania law, an individual's failure to pay the transfer tax results in the creation of a lien in favor of the affected local government on *all* of the individual's property – both real and personal. *See* 72 Pa. Cons. Stat. Ann. § 8110-D. By Appellants' logic, then, the transfer tax is a direct tax on both real property and personal property. To see the absurdity of this reading, one need only consider that the United States may place a lien on a delinquent taxpayer's home for failure to pay income taxes, but that does not transform the federal income tax into a tax on real property.

*See* 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.").

The transfer taxes are an excise tax, not a direct tax on real estate, and therefore are not within the scope of the exception. *Accord Montgomery Cnty.*, 740 F.3d at 919-21.

## C.

We turn now to Appellants' constitutional arguments. They offer two: first, that as applied to state and local real estate transfer taxes, the Enterprise exemptions exceed Congress's power under the Commerce Clause; and second, that by requiring state and local governments to record deed transfers at no cost, Congress has engaged in an unconstitutional commandeering under the Tenth Amendment. We find neither argument persuasive. But

30

before proceeding to the merits, we first consider Appellants' contention that we should review the constitutionality of the exemptions under heightened scrutiny.

1.

Ordinarily, we review the constitutionality of social or economic legislation under a deferential rational basis standard of review. *See Brian B. ex rel. Lois B. v. Commw. of Pa. Dep't of Educ.*, 230 F.3d 582, 586 (3d Cir. 2000). Appellants, however, argue that we should depart from that practice and apply some (undefined) manner of heightened scrutiny to the exemptions because they place a burden on the ability of the states to collect taxes. We are not persuaded by Appellants' argument.

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. VI., cl. 2. Where state and

federal laws conflict, the state law is "without effect." *Mutual Pharm. Co., Inc. v. Bartlett*, --- U.S. ---, 133 S. Ct. 2466, 2472-73 (2013). Appellants' assertion that a state's taxing authority "stands on equal footing with" Congress's power under the Commerce Clause, *see* Appellants' Br. at 30, was flatly rejected by the Supreme Court nearly 200 years ago:

> It has been contended, that this construction of the power to regulate commerce, as was contended in construing the prohibition to lay duties on imports, would abridge the acknowledged power of a State to tax its own citizens, or their property within its territory. We admit this power to be sacred; but cannot admit that it may be used so as to obstruct the free course of a power given to Congress. *We cannot admit, that it may be used so as to obstruct or defeat the power to regulate commerce.* It has been observed, that the powers remaining with the States may be so exercised as to come in conflict with those vested in Congress. When this happens, that which is not supreme must yield to that which is supreme. . . . *It results, necessarily, from this principle, that the taxing power of the States must have some limits.* It cannot reach and

> restrain the action of the national government
> within its proper sphere. . . . *It cannot interfere
> with any regulation of commerce.*

*Brown v. Maryland*, 25 U.S. (12 Wheat.) 419, 448-49 (1827) (Marshall, C.J.) (paragraph break omitted; emphasis added); *see also DeKalb County*, 741 F.3d at 801 (rejecting the argument pressed here by Appellants as foreclosed by *Brown* and "an unbroken line of decisions since"). More recent precedent confirms that Congress may constitutionally supersede state tax laws as a rational part of an interstate regulatory regime. *See, e.g., CSX Transp., Inc. v. Ga. State Bd. of Equalization*, 552 U.S. 9, 20-22 (2007) (recognizing that a federal statute prohibits states from imposing certain taxes on railroads); *Exxon Corp. v. Hunt*, 475 U.S. 355, 376 (1986) (holding that a federal environmental statute preempted New Jersey's ability to impose certain taxes); *Ariz. Pub. Serv. Co. v. Snead*, 441 U.S. 141, 149-50 (1979) (holding that, because "Congress had a rational basis" for

finding that a state tax interfered with interstate commerce, it was within the power of Congress to "select[] a reasonable method to eliminate that interference"). As Judge Posner succinctly stated, "[n]o provision of the Constitution insulates state taxes from federal powers granted by the Constitution, which include of course the power of Congress 'to regulate Commerce with foreign Nations, and among the several States'. . . ." *DeKalb County*, 741 F.3d at 801 (quoting U.S. Const. art. I, § 8, cl. 3).

It is true, as Appellants suggest, that the Supreme Court has respected the authority to tax as a critical component of state sovereignty. But the Court has manifested that respect not by placing state taxation power on an equal constitutional plane with Congress's commerce power (or any other enumerated power), but by requiring that Congress speak clearly when it intends to exercise its lawful authority under the Supremacy Clause to preempt traditional

state powers. *See, e.g., Dep't of Rev. of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 345 (1994) ("When determining the breadth of a federal statute that impinges upon or pre-empts the States' traditional powers, we are hesitant to extend the statute beyond its evident scope. We will interpret a statute to pre-empt the traditional state powers only if that result is 'the clear and manifest purpose of Congress.'" (citations omitted)). Our general reluctance to hold traditional state powers preempted is an interpretive principle that guides how we construe statutes, not a heightened constitutional standard of review. Accordingly, we review Congress's action here under the rational basis standard of review.

2.

Our national Government is one of enumerated powers, and accordingly "[e]very law enacted by Congress must be based on one or more of those powers." *United States v. Comstock*, 560 U.S. 126, 133 (2010) (quoting *United*

*States v. Morrison*, 529 U.S. 598, 607 (2000) (internal quotation marks omitted)). Congress has the power to "regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I, § 8, cl. 3. Through the Necessary and Proper Clause, Congress can exercise its commerce authority by "enact[ing] laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *Comstock*, 560 U.S. at 133-34. "'Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.'" *Id.* at 134 (quoting *McCulloch v. Maryland*, 4 Wheat. 316, 421 (1819)). Put simply, a statute is "Necessary and Proper" if it "constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Id.* (citing *Sabri v. United States*, 541 U.S. 600, 605 (2004)).

The Commerce Clause authorizes Congress to regulate "the channels of interstate commerce, persons or things in interstate commerce, and those activities that substantially affect interstate commerce." *Nat. Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2578 (2012) (quoting *Morrison*, 529 U.S. at 609) (internal quotation marks omitted). This case implicates Congress's power to regulate those activities that substantially affect interstate commerce, a power that "can be expansive." *Id.* The Supreme Court has "firmly establishe[d]" that Congress has the authority under the Commerce Clause to regulate activities purely local in nature, so long as they form "part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (emphasis added).

In evaluating whether a statute is valid under the Commerce Clause, our "task . . . is a modest one." *Id.* at 22. We need only determine whether Congress had a rational

basis for determining that the regulated activity, in the aggregate, substantially affects interstate commerce. *Id.* (citing *United States v. Lopez*, 514 U.S. 549 (1995); *Hodel*, 452 U.S. at 276-80; *Perez v. United States*, 402 U.S. 146, 155-56 (1971); *Katzenbach v. McClung*, 379 U.S. 294, 299-301 (1964); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 252-53 (1964)). "That the regulation ensnares some purely intrastate activity is of no moment." *Id.*

Congress created the Enterprises to establish and stabilize a nationwide secondary market in home mortgages and to increase the supply of mortgage lending capital. *See* 12 U.S.C. § 1716 (Fannie Mae); *id.* § 1451 note (Freddie Mac). Fannie and Freddie both were "tasked by Congress with buying mortgages from banks that had made mortgage loans, thus pumping money into the banking industry that could be used to make more such loans." *DeKalb County*, 741 F.3d at 797. Congress could rationally have believed that

exempting the Enterprises from the burden of state and local taxation would allow them to more efficiently pursue their directives. Reducing the transaction costs that the Enterprises incur in the course of buying and selling mortgages would free up liquidity to purchase more of them. And the savings are not inconsequential. The Delaware County Appellants alleged that for the fiscal year ending in June 2011, the state of Pennsylvania collected over $279 million in real estate transfer taxes. Although Appellants have not alleged a dollar amount that Fannie and Freddie failed to pay, it can hardly be gainsaid that it is a substantial sum. It strains credulity to argue that the transfer taxes, aggregated nationally, do not substantially affect "the home mortgage market[, which] is nationwide, and indeed worldwide, with home mortgages being traded in vast quantities across state lines." *Id.* at 11.

Appellants cite *Lopez* and *Morrison* in an effort to show that Congress here exceeded the bounds of the

Commerce Clause by seeking to regulate purely local activity, but neither case advances their argument. In *Lopez*, the Court struck down a federal statute making it a crime to possess a firearm in a school zone. 514 U.S. at 551. Recognizing first that it had "upheld a wide variety of congressional Acts regulating intrastate economic activity" that substantially affected interstate commerce, the Court held the statute unconstitutional because "by its terms [it] has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561. By the same token, the *Morrison* Court struck down a statute creating a civil damages remedy under the Violence Against Women Act because "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." 528 U.S. at 613. The lesson to be drawn from *Lopez* and *Morrison* is that whether the activity is economic in nature is central to our analysis: "Where economic activity

substantially affects interstate commerce, legislation regulating that activity will be sustained." *Id.* at 610 (quoting *Lopez*, 514 U.S. at 560 (internal quotation marks omitted)).

Appellants attempt to shift the analysis away from the obviously economic nature of the secondary mortgage market by arguing that the collection of taxes is not economic activity but rather "[t]he sovereign right of states." Appellants' Br. at 34. We find this argument unpersuasive. The transfer tax exemptions aid the Enterprises in regulating the secondary mortgage market, which is clearly of an economic nature. As previously discussed, considerations of state sovereignty yield under the Supremacy Clause. Appellants simply have no support for the notion that congressional preemption of state taxation as a rational part of an interstate regulatory regime is verboten. Accordingly, we hold that Congress acted well within the bounds of the Commerce Clause when it exempted the Enterprises from

paying state and local real estate transfer taxes.[4]

3.

In a single paragraph appended to their Commerce Clause argument, Appellants contend that by requiring state and local governments to register deed transfers involving the Enterprises at no cost, Congress has violated the anti-commandeering principle of the Tenth Amendment. This argument is frivolous.

Only two Supreme Court cases have found a federal statute to unlawfully commandeer state government actors.

_____

[4] The parties debated at some length in their briefs whether the Enterprises are federal instrumentalities for purposes of tax immunity and whether it was necessary for us to reach that question. It is, of course, axiomatic that the States may not tax an organ of the federal government. *See McCulloch v. Maryland*, 4 Wheat. 316, 436-37 (1819). However, because we find that Congress acted constitutionally in extending *statutory* tax immunity to the Enterprises, we need not reach the question of whether they are also entitled to *constitutional* immunity as instrumentalities of the United States. *See First Agric. Nat'l Bank of Berkshire Cnty. v. State Tax Comm'n*, 392 U.S. 339, 340-41, 345 (1968).

In *Printz v. United States*, the Supreme Court invalidated a federal statute requiring state and local law enforcement officers to perform background checks on prospective handgun purchasers, holding that the Tenth Amendment precludes Congress from commanding state executive officers to administer or enforce a federal regulatory scheme. 521 U.S. 898, 904, 932-33 (1997). In *New York v. United States*, 505 U.S. 144, 149-54 (1992), the Court considered a federal regulatory regime involving the disposal of low-level radioactive waste by the states. One aspect of the regime required states to take title to the waste if they had not arranged for disposal by a specified date. *Id.* The Court struck that provision down because it required states either to enact a regulatory regime of their own, or expend resources in taking title to the radioactive waste. *Id.* at 176. Neither case bears the slightest resemblance to the situation before us.

The Enterprise exemptions do not run afoul of *Printz*

or *New York* for the simple reason that they do not "issue directives requiring the States to address particular problems, nor command the States' officers . . . to administer or enforce a federal regulatory program." *Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 229 (3d Cir. 2013) (quoting *Printz*, 521 U.S. at 935) (internal quotation marks omitted). The anti-commandeering principle does not "suspend[] the operation of the Supremacy Clause on otherwise valid laws." *Id.* at 230. Rather than impose an affirmative obligation on state or local officials, the exemptions simply preclude them from imposing the transfer taxes on the Enterprises. A state official's compliance with federal law and non-enforcement of a preempted state law – as required by the Supremacy Clause – is not an unconstitutional commandeering.

## IV.

We conclude that the statutory language "all taxation"

includes within its scope state and local real estate transfer taxes and that the carve-out for real property taxation does not apply to the transfer taxes. We further hold that Congress was within its constitutional authority to grant the Enterprises such immunity. Our decision is in accord with each Court of Appeals to have addressed these issues. The orders of the District Courts dismissing Appellants' complaints are affirmed.