RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BOARD OF COMMISSIONERS OF MONTGOMERY
COUNTY, OHIO, and BOARD OF COMMISSIONERS OF
SENECA COUNTY, OHIO,

     *Plaintiffs-Appellants,*

                  No. 13-4429

   *v.*

FEDERAL HOUSING FINANCE AGENCY, FEDERAL
NATIONAL MORTGAGE ASSOCIATION, and FEDERAL
HOME LOAN MORTGAGE CORPORATION,

     *Defendants-Appellees,*

UNITED STATES OF AMERICA,

     *Intervenor.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton
No. 3:12-cv-00245—Thomas M. Rose, District Judge.

Argued: June 24, 2014

Decided and Filed: July 10, 2014

Before: SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Nathaniel C. Giddings, HAUSFELD LLP, Washington, D.C., for Appellants. Michael A.F. Johnson, ARNOLD & PORTER LLP, Washington, D.C., for Appellees. Patrick J. Urda, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Nathaniel C. Giddings, James J. Pizzirusso, HAUSFELD LLP, Washington, D.C., Don Springmeyer, WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP, Las Vegas, Nevada, Mark H. Troutman, Mark Landes, ISAAC, BRANT, LEDMAN & TEETOR LLP, Columbus, Ohio, for Appellants. Michael A.F. Johnson, Howard N. Cayne, Asim Varma, Dirk C. Phillips, ARNOLD & PORTER LLP, Washington, D.C., Michael J. Ciatti, Merritt E.

McAlister, KING & SPALDING LLP, Washington, D.C., Michael D. Leffel, FOLEY & LARDNER LLP, Madison, Wisconsin, Jill L. Nicholson, FOLEY & LARDNER LLP, Chicago, Illinois, for Appellees.  Patrick J. Urda, Jonathan S. Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

————————————

## OPINION

————————————

KAREN NELSON MOORE, Circuit Judge.   Two Ohio counties brought this suit on behalf of a class of all Ohio counties against the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), as well as the Federal Housing Finance Agency ("FHFA"), as conservator for both Fannie Mae and Freddie Mac.   In their suit against Fannie Mae and Freddie Mac (collectively, the "Enterprises") and FHFA, the Ohio counties sought unpaid real property transfer taxes under Ohio law.   The Enterprises claim that they are exempt, per their federal charters, from such state taxes.

The state real property transfer taxes at issue are encompassed in the Enterprises' statutory exemptions from all taxation.   Moreover, real property transfer taxes are excise taxes rather than taxes on real property which are an exception to those tax exemptions.   Finally, Congress had the power to enact the exemptions under the Commerce Clause, and the enactment does not run afoul of any constitutional provision.   Therefore, because constitutionally sound federal statutes exempt Fannie Mae and Freddie Mac from real property transfer taxes, we AFFIRM the district court's judgment dismissing the case.

## I.  BACKGROUND

Fannie Mae was established by congressional enactment of its charter in 1938 "to establish secondary market facilities for residential mortgages."  12 U.S.C. § 1716.  This added liquidity allows lenders to sell mortgages and use the proceeds to fund new loans.  Fannie Mae became a privately held corporation in 1968.  Fannie Mae's charter spells out that:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or

dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2).

Freddie Mac was established in 1970 to compete with Fannie Mae, expand and stabilize the secondary mortgage market, and provide further liquidity for mortgages. *See* Federal Home Loan Mortgage Corporation Act, Pub. L. No. 91–351, 84 Stat. 450, 451 (1970) (codified, as amended, at 12 U.S.C. §§ 1451 *et seq.*); *see also DeKalb Cnty. v. Fed. Hous. Fin. Agency*, 741 F.3d 795, 797–98, 803 (7th Cir. 2013). Freddie Mac's charter provides that:

The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

12 U.S.C. § 1452(e).

FHFA, an independent federal agency, was established in 2008. Pub. L. No. 110-289, 122 Stat. 2654 (codified in part at 12 U.S.C. § 4617 *et seq.*). Fannie Mae and Freddie Mac have been placed into conservatorship under FHFA "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs." 12 U.S.C. § 4617(a)(2). FHFA has its own exemption from state taxes:

The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . .

12 U.S.C. § 4617(j)(2).

The Ohio counties in this dispute seek enforcement of real property transfer taxes under Ohio law. *See* Ohio Rev. Code §§ 319.54(G)(3), 322.02(A) (stating that "any county may levy and collect a tax to be known as the real property transfer tax on each deed conveying real

property or any interest in real property located wholly or partially within the boundaries of the county").

The district court granted the defendants' motion to dismiss on October 23, 2013.  R. 74 (Entry and Order Granting Defs.' Mot. To Dismiss Pls.' Consol. Amended Class Action Compl. (Doc. 24) and Terminating Case.) (Page ID ##1260–69).  In its opinion, the district court reasoned that the case was "largely governed" by our decision regarding Michigan's real property transfer tax.  *Id.* at 7 (Page ID #1266) (quoting *County of Oakland v. Fed. Hous. Fin. Agency*, 716 F.3d 935 (6th Cir. 2013)).  It then rejected the counties' "request[]" to "create a strict scrutiny of legislation that limits a state's ability to levy taxes."  *Id.* at 8 (Page ID #1267).  Rather, the district court deemed that the congressional enactment, which includes the statutory tax exemption, "is not aimed at state property transfer taxes, but at facilitating the secondary mortgage market."  *Id.*  Thus, the district court performed a traditional analysis of the congressional enactment and determined that the legislation's subject was the "secondary mortgage market, which has a substantial nexus with interstate commerce," that "[e]xempting Defendants from state and local taxation is reasonably adapted to the end Congress sought to achieve—more equitable and efficient allocation of mortgage credit throughout the nation"—and that the means for achieving this end are "rational."  *Id.* at 9 (Page ID #1268).  Having implicitly concluded that Congress intended to preempt state taxation, the district court held that this preemption did not run afoul of the Constitution.  *See id.*

This circuit has previously reviewed and rejected a challenge on statutory grounds by Michigan counties attempting to force Fannie Mae and Freddie Mac to pay the Michigan real estate transfer tax.  *See County of Oakland*, 716 F.3d 935.  In that case, the Sixth Circuit panel held that the exemption from "all taxation" includes the Michigan real estate transfer tax.  *See id.* at 940.[1]  In a footnote, the panel noted that the Michigan counties were, for the first time on appeal, arguing in the alternative that the real estate transfer tax while falling under the ban of "all taxation" is excluded from that ban by the real property tax exception in the various statutes.

---

[1]While the counties would like to argue that Ohio's real property transfer tax does not fall under "all taxation" as provided in the various statutory enactments, they concede that this panel is bound by the decision in *Oakland County* and do not argue for a different result here.

*Id.* at 939 n.6.  The panel determined that the argument was forfeited because it was not argued in the district court, but that even if it were not forfeited, "the transfer tax, as a privilege tax, does not fit into the carve out allowing for taxes on real property." *Id.*

## II.  DISCUSSION

We review the district court's grant of the motion to dismiss *de novo*.  *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).  Similarly, we review "*de novo* a district court's purely legal determinations, including determinations regarding statutory construction and the constitutionality of a federal statute."  *United States v. Felts*, 674 F.3d 599, 602 (6th Cir. 2012).

### A.  Statutory Issue: Real Property Exception

Fannie Mae's charter prohibits state and local taxation of Fannie Mae "except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed."  12 U.S.C. § 1723a(c)(2).  Similarly, Freddie Mac's charter prohibits state and local taxation of Freddie Mac "except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."  12 U.S.C. § 1452(e).  As for FHFA, taxation is prohibited "except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."  12 U.S.C. § 4617(j)(2).  The Ohio counties argue that the state and local real property transfer taxes fall into the statutory exceptions for taxation of real property.  *See* Appellants Br. at 47–52.  If so, then the defendants are statutorily required to pay the tax.  We first address this statutory argument in order to avoid the constitutional issues if possible.  *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

The parties disagree whether the *County of Oakland* panel's statement that real estate transfer taxes "do[] not fit into the carve out allowing for taxes on real property," *County of*

*Oakland*, 716 F.3d at 939 n.6, is binding precedent in the Sixth Circuit. The *County of Oakland* panel held that the Michigan plaintiffs in that case had "forfeited this argument by not pressing it below in any meaningful way." *Id.* The declaration that transfer taxes are not subject to the real property exception was made only as a counterfactual. *See id.* (providing the conclusion only after stating "[e]ven if [the Michigan counties] had not forfeited the argument"). Because the forfeiture conclusion disposed of the argument, the declaration that real estate transfer taxes are not subject to the real property exception was not necessary to the outcome of the case, and is, thus, mere *dicta*. *See United States v. Stevenson*, 676 F.3d 557, 561–62 (6th Cir. 2012). While the defendants urge this panel "to treat [both reasons] as alternative bases of decision," Appellees Br. at 10 (quoting *MacDonald, Sommer, & Frates v. Yolo Cnty.*, 477 U.S. 340, 346 n.4 (1986)), the cases cited do not actually support the conclusion that the real property exception declaration should be treated as binding precedent in this circuit. By determining that the Michigan counties had forfeited their argument, the *Oakland County* panel made clear that it did not need to reach the question whether real estate transfer taxes are part of the real property exception. Thus, we do not consider that panel's statements to be binding precedent.

The *Oakland County* panel's conclusion that real estate transfer taxes do not fit into the real property tax carve out, however, is sound. While a county may levy the transfer tax "on each deed conveying real property or any interest in real property," the transfer tax is "levied upon the grantor named in the deed." Ohio Rev. Code § 322.02(A). Ohio courts have held that this transfer tax is an excise tax. *Okey v. Walton*, 302 N.E.2d 895, 902 (Ohio App. 1973) ("We hold that R.C. Section 322.02 is an excise tax that comes under Section 10, Article XII of the Ohio Constitution."). The Supreme Court of Ohio has distinguished between an excise tax, which is levied on a privilege, and a property tax levied directly against the property. *General Am. Transp. Corp. v. Limbach, Tax Comm'r*, 473 N.E.2d 814, 818 (Ohio 1984) ("An excise tax is one levied on a privilege and not one levied directly against the property."). Thus, we conclude that the real property transfer tax at issue is an excise tax upon the grantor of real property for the privilege of transferring real property rather than a real property tax levied directly against the property.

Our sister circuits have reached the same conclusion regarding real property transfer taxes. *See, e.g.*, *Del. Cnty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 224 (3d Cir. 2014) (holding that "transfer taxes are an excise tax, not a direct tax on real estate, and therefore are not within the scope of the [real property] exception"); *Montgomery Cnty., Md. v. Fed. Nat'l Mortg. Ass'n*, 740 F.3d 914, 920 (4th Cir. 2014) (holding similarly because "every legal and common understanding distinguishes a property tax from a transfer or sales tax"); *Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*, 742 F.3d 818, 822 (8th Cir. 2014) ("Minnesota's deed transfer tax is a tax imposed by the state on the transfer of real property, not on the real property itself. It therefore does not fall within the real property exception to the agencies' broad tax exemptions. We conclude that Fannie Mae, Freddie Mac, and the FHFA are exempt from Minnesota's deed transfer tax.");[2] *Board of Cnty. Comm'rs Kay Cnty., Okla. v. Fed. Hous. Fin. Agency*, -- F.3d --, 2014 WL 2619884, at *4 (D.C. Cir. 2014) ("The Transfer Tax, which is measured by the value of the property but triggered only at its transfer, is clearly an excise tax. . . . Appellant's attempt to convert the Transfer Tax into a property tax fails."); *DeKalb Cnty.*, 741 F.3d at 799 ("[The] exemption is from 'all taxation' except real property taxation, and a tax on a real estate sale is a tax not on property but on the transfer of property—a well-recognized distinction."); *see also United States v. Wells Fargo Bank*, 485 U.S. 351, 355 (1988) (noting "the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself"). Thus, we now hold similarly that the Ohio real property transfer tax is not a real property tax that fits within the statutory exceptions to the exemptions.

## B. Constitutional Issue: Congressional Authority

Having concluded that the congressionally enacted charters exempt the enterprises from state and local real property transfer taxes, we turn now to the constitutional question whether Congress had the authority under the Commerce Clause to enact such exemptions.[3] We answer

---

[2]This conclusion was recently reiterated in *Vadnais v. Federal National Mortgage*, -- F.3d --, 2014 WL 2535276, at *3 (8th Cir. 2014).

[3]We reject the Ohio counties' argument that we should apply strict scrutiny in evaluating the charter tax exemptions, *see* Appellants Br. at 45–47. The Ohio counties assert that "the rights of the States to exercise police powers and impose taxes are just as fundamental, from a constitutional standpoint, as the rights of individuals' due

in the affirmative the question whether the state tax exemptions in the federal charters of these Enterprises "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *United States v. Lopez*, 514 U.S. 549, 561 (1995).

In creating Fannie Mae and Freddie Mac, Congress's purpose was to add liquidity to the secondary mortgage market. In effect, Congress was creating purchasers of mortgages who would provide cash to the original lenders, who could then lend that money back out. The creation of corporations that bought mortgages on the secondary market thus produced greater availability of credit for home purchases.

The Enterprises argue that by including exemptions from state and local taxes, Congress was attempting to accomplish two objectives: to reduce the cost of mortgage finance and to ensure the equitable provision of mortgages anywhere in the nation. In purchasing the mortgages, the Enterprises take on risk that the borrowers will default. When defaults invariably occur, the Enterprises will foreclose on the homes and gain ownership of real property in various states and localities. In order to recoup their money, the Enterprises will have to sell the property. The tax exemptions lower the costs of selling the homes, allowing the Enterprises to recoup more of their losses. Because the cost of a default is lowered, the Enterprises are willing to pay more originally for the mortgages they purchase. This greater demand for mortgages on the secondary market and the greater amount that the original lenders receive when they sell the mortgages leads to more lending and the greater availability of mortgages throughout the nation. Thus, the tax exemptions reduce the cost of mortgage finance in the nationwide secondary mortgage market.

---

process and equal protection." *Id.* at 46. Rather than evaluate whether this assertion is accurate, we note simply that even if it is, we can find no legal precedent for applying strict scrutiny where a congressional enactment interferes with "the rights of the States to exercise police powers and impose taxes." This lack of precedent is far from surprising, as we see no reason to apply strict scrutiny to defend states which are well-represented in our republic and which do not require special protection from the federal courts. Moreover, applying strict scrutiny to all federal legislation that interferes with "the rights of the States to exercise police powers and impose taxes" would be absurd, as much of today's federal legislation likely in some way interferes with states' exercise of their police powers or imposition of taxes.

The tax exemptions also ensure the equitable provision of mortgages across state lines. With non-uniform state and local tax rates, the Enterprises would suffer greater losses in states and localities that have high real property transfer taxes than in those with lower taxes. As a result, the Enterprises would be willing to pay more for mortgages in lower-tax locations than in higher-tax locations. Thus, lenders would be better compensated for selling mortgages from low tax locations and would be willing to make more home loans in these locations. Overall, the differing state and local real property transfer taxes would lead to more mortgage credit being available in some localities than others. The uniform exemption from all state and local taxes, thus not only leads to greater availability of mortgage credit, but also ensures its equitable distribution to all states and localities across the nation.

We conclude that the transfer tax exemptions are connected to the sale of mortgages across state lines on the secondary mortgage market, and these sales, when viewed in the aggregate, substantially affect interstate commerce. Thus, Congress had the power under the Commerce Clause to enact this statutory provision.

Moreover, we find nothing that suggests Congress cannot exercise its Commerce Clause power to supersede state tax laws. The counties' argument that "the Supreme Court has consistently construed statutory exemptions from state taxation in favor of the States and has never implied the existence of such exemptions," Appellants Br. at 20 (citing *Hoge v. R.R. Co.*, 99 U.S. 348, 355 (1879)), actually proves that Congress can enact such statutory exemptions. The Supreme Court has recognized that Congress can expand tax immunity "beyond its narrow constitutional limits" "by so expressly providing." *United States v. New Mexico*, 455 U.S. 720, 737 (1982). Here, Congress has *expressly* exempted Fannie Mae and Freddie Mac from *all taxation* by states and localities (except for real property taxes).

Our sister circuits that have considered the issue all agree that the exemptions are necessary and proper to regulate the secondary mortgage market, which is without a doubt a national market that Congress has the authority under the Commerce Clause to regulate. *See Del. Cnty., Pa.*, 747 F.3d at 227–28 (noting that "[t]he transfer tax exemptions aid the Enterprises in regulating the secondary mortgage market, which is clearly of an economic

nature," and holding that "Congress acted well within the bounds of the Commerce Clause when it exempted the Enterprises from paying state and local real estate transfer taxes"); *Montgomery Cnty., Md.*, 740 F.3d at 924 ("[T]he ultimate goals of the statutory scheme at issue in this case are to stabilize the secondary mortgage market and to promote liquidity in that market, which are quintessentially interstate and economic aims."); *DeKalb Cnty.*, 741 F.3d at 801 ("The constitutional basis for the statute is the commerce clause, and it is obvious that the home mortgage market is nationwide, and indeed worldwide, with home mortgages being traded in vast quantities across state lines."). Our sister circuits also agree that where congressional enactments conflict with state tax laws, the Supremacy Clause ensures that the federal statute overrides any contrary imposition of state taxes. *See DeKalb Cnty.*, 741 F.3d at 801 (rejecting the argument that "statutes authorized by the commerce clause must be subordinated to state and local tax statutes because taxation is fundamental to state sovereignty" and stating that "[n]o provision of the Constitution insulates state taxes from federal powers granted by the Constitution, which include of course the [Commerce Clause] power"); *Del. Cnty., Pa.*, 747 F.3d at 225 (rejecting any assertion that state taxing authority can supersede or even equal Congress's Commerce Clause power and later reiterating that "considerations of state sovereignty yield under the Supremacy Clause," *id.* at 227); *Vadnais v. Fed. Nat'l Mortg.*, -- F.3d --, 2014 WL 2535276, at *4–5 (8th Cir. 2014) (holding that the statutory exemptions not only supersede Minnesota state tax laws, but are proper exercises of the Commerce Clause power). The charter exemptions are constitutional exercises of Congress's Commerce Clause power that supersede state tax laws.

Finally, the Tenth Amendment plays no role in this analysis because the Enterprises' charters were enacted by Congress exercising the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes," U.S. CONST. art. I, § 8, cl. 3. This power was explicitly "delegated to the United States by the Constitution." U.S. CONST. amend. X. Consequently, the Enterprises are statutorily exempt from paying state real property transfer taxes.[4]

---

[4]Because we hold that the Enterprises are statutorily exempt from state and local real property transfer taxes, we do not need to reach the question whether they are constitutionally exempt from such taxes as federal

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment dismissing this suit.

---

instrumentalities.  *See First Agric. Nat'l Bank of Berkshire Cnty. v. State Tax Comm'n*, 392 U.S. 339, 341 (1968) (stating that congressional legislation limiting state power to tax national banks makes it "unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities"); *see also Del. Cnty., Pa.*, 747 F.3d at 228 n.4 (determining that "because we find that Congress acted constitutionally in extending *statutory* tax immunity to the Enterprises, we need not reach the question of whether they are also entitled to *constitutional* immunity as instrumentalities of the United States").